## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:23-CR-00080 |
| v. | (Chief Judge Brann)[*] |
| HENRY JAMES HOLMES, | |
| Defendant. | |

### MEMORANDUM OPINION

### AUGUST 2, 2024

## I.  PROCEDURAL BACKGROUND

Henry James Holmes, Defendant, is charged with one count of Mailing Threatening Communications in violation of 18 U.S.C. § 876(c) and one count of Influencing, Impeding, Or Retaliating Against a Federal Official in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4).[1] Pending before the Court is the United States of America's Omnibus Motion in Limine.[2] In this motion, the Government seeks a determination regarding the admissibility of filings made by Holmes in various civil cases before the United States District Court for the Western District of Pennsylvania[3] and the exclusion of certain exculpatory statements made by Holmes.[4]

---

[*]  The Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[1]  Doc. 67 (Superseding Indictment).

[2]  Doc. 89 (United States of America's Motion in Limine).

[3]  The Government has identified filings in the following dockets: 2:17-cv-1278; 2:19-cv-1398, 2:22-cv-0047, 2:22-cv-1342, 2:22-cv-1375, 2:22-cv-490, 2:22-cv-1375, 2:22-cv-580, and

## II.    RELEVANT FACTUAL BACKGROUND

Holmes is an active civil litigant in the United States District Court for the Western District of Pennsylvania.[5] Based on the exhibit filed by the Government, it appears that his cases were overseen by the three judges allegedly threatened in this case.[6] These civil cases often ended with adverse rulings against Holmes.[7] In response to these rulings, Holmes frequently communicated with the Court.

These letters eventually prompted two Deputy United States Marshals, Tom Faherty and Derek Berger, to interview Holmes.[8] The first interview occurred in December 2019 and the second occurred in October 2020.[9] According to the Government, Faherty and Berger explained to Holmes "why they were there and discussed [his] correspondence [with the Court] with him."[10] "They explained to [Holmes] how the language [he] used in his letters could be construed as threatening."[11] During these interviews, the Government represents that Holmes

---

2:22-cv-1612. The Government has also sought to introduce three restricted filings from cases docketed at: 2:19-cv-1398, 2:17-cv-1278, and 2:19-cv-1398.

[4]   Doc. 89 (United States of America's Motion in Limine). The Government also requested that the Court rule that the documents identified in its Exhibit are admissible without the need to present extrinsic evidence of authenticity pursuant to Federal Rule of Evidence 902(4). *Id.* at 13-14. Defendant has not challenged this portion of the Government's motion except as to three documents. Doc. 92 (Defendant's Response in Opposition) at 3-4. Accordingly, I will grant this portion of the Motion in Limine, excluding the restricted documents in the following cases: Doc. 22 in 2:17-cv-1278 and Doc. 20 and Doc. 35 in 2:19-cv-1398.

[5]   Doc. 90 (Exhibit).

[6]   *Id.*

[7]   *Id.*

[8]   Doc. 89 (United States of America's Motion in Limine) at 8.

[9]   *Id.*

[10]   *Id.*

[11]   *Id.*

made inculpatory statements regarding "his authorship of the borderline-threatening letters" and certain exculpatory statements, as described below.[12]

When asked about the phrase "I'm coming for you Judge. Count on it!" in the December 2019 interview, Holmes made the following statements:

"Yeah I mean in a lawsuit;"

"I meant no bodily harm whatsoever;"

"Threatening bodily harm won't solve anything;" and

"It [threatening violence] will only get you a matching pair of silver handcuffs and jail time."[13]

In the October 2020 interview, Holmes was asked about the following statements: "We have unfinished business! You judges who dismissed my lawsuits" and "Good thing my armed military family members were [sic] not here."[14] In response to this line of questioning, Holmes purportedly told the Deputy Marshals:

"[T]hat he meant in the legal realms;"

"[T]hat he means no violence towards anyone and identifies as a nonviolent person;"

"[T]hat he believes that violence will hurt his chance of being awarded money in a lawsuit;"

"That the reference to his armed military family members referred to them not being around when police responded to his house in California years ago;"

---

[12] *Id.*
[13] *Id.* at 9-10.
[14] *Id.*

"[T]hat his lack of education, combined with his emotional connection to the case, results in some of the inappropriate language he elected to use; and"

"[T]hat he did not graduate from high school and the statements in the correspondence are 'just the way I talk.'"[15]

On April 7, 2023, an envelope was mailed to the United States Attorney's Office in the Western District of Pennsylvania.[16] "Henry Holmes" and an address in Pittsburgh were listed for the return address.[17] This envelope contained a fifteen-page letter that "demanded criminal charges be brought against three federal judges, whom it identified by name and title."[18] This letter "also included various legal and other documents bearing handwritten annotations that include, in the Government's view, 'true threats' made by" Holmes.[19]

## III.   DISCUSSION

### A.   Standard

A motion in limine "allow[s] the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."[20] A "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."[21] Further, I may defer ruling on this motion

---

[15]   *Id.*
[16]   *Id.* at 1.
[17]   *Id.*
[18]   *Id.*
[19]   *Id.*
[20]   *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017).
[21]   *Id.*

"if the context of trial would provide clarity."[22] Finally, I note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[23]

## B.    Analysis

### 1.    The Documents

The Government has requested that the Court rule on the admissibility of forty-one documents that it claims are either intrinsic evidence or admissible under Federal Rule of Evidence 404(b). The United States Court of Appeals for the Third Circuit has "reserve[d] the 'intrinsic' label for two narrow categories of evidence. First, evidence is intrinsic if it 'directly proves' the charged offense … Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'"[24]

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also

---

[22]  *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012).
[23]  *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).
[24]  *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (internal citations omitted).

'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted."[25]

"Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has 'the burden of demonstrating [the evidence's] applicability.'"[26] "Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction."[27] This analysis requires "careful precision" from the Court.[28]

In its reply brief, the Government sorts the various documents contained in its Exhibit into two categories: (1) documents that are intrinsic evidence to Count II of the Superseding Indictment or, alternatively, evidence that shows motive as to both counts and (2) documents that are intrinsic evidence to show that the April 7, 2023 Letter contains true threats and to demonstrate Holmes' mental state or, alternatively, evidence that shows motive and completes the story for the jury.

---

[25]   *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).
[26]   *Id.* (quoting *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)).
[27]   *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 691, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); *Caldwell*, 760 F.3d at 277-78).
[28]   *United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014) (citing *Caldwell*, 760 F.3d at 274).

6

### a.    The First Category of Documents[29]

The Government contends that the documents in its first category are intrinsic evidence to Count II because they directly prove parts of this charge. Count II can be broken down into two elements: (1) that Holmes threatened to injure or kill a Judge of the United States District Court and two United States Magistrate Judges and (2) he did so with the intent to impede, intimidate, or interfere with these Judges while they were engaged in the performance of official duties or with the intent to retaliate against these judges on account of their performance of official duties. These documents purportedly demonstrate that the judges were performing official duties. Alternatively, the Government asserts that these documents are admissible under Rule 404(b) to establish Holmes' motive under both Counts. Since intrinsic evidence and evidence admitted under Rule 404(b) must undergo the Rule 403 balancing test, I will proceed directly to evaluating whether the government has identified a non-propensity purpose for these documents.

### i.    Documents from Docket No. 2:17-cv-1278

The Government seeks admission of the following documents from the case docketed at 2:17-cv-1278: the Civil Complaint, the Docket Sheet, a Text-Only Docket Entry, a Report and Recommendation ("R&R") from Magistrate Judge

---

[29]   These documents include civil filings in the cases found at the following dockets: 2:17-cv-1278, 2:19-cv-1398, 2:22-cv-47, 2:22-cv-1342, 2:22-cv-1375, and 2:22-cv-1612.

Kelly, an Order adopting this R&R from Chief Judge Hornak, a Motion for Reconsideration from Holmes, and an Order from Chief Judge Hornak denying this Motion for Reconsideration.[30]

The R&R, the Order adopting the R&R, and the Order denying the Motion for Reconsideration demonstrate that Chief Judge Hornak and Magistrate Judge Kelly were acting in their official capacities and support an inference as to Holmes' mental state when he allegedly wrote the April 7, 2023 letter by providing him with a motive. This motive is a valid, non-propensity purpose that is relevant to both Count I and Count II. For Count I, the Government must prove beyond a reasonable doubt that Holmes intended the communication to be viewed as a threat; for Count II, the Government must demonstrate that he possessed the intent to impede, intimidate, interfere with, or retaliate against the judges. The indication that the judges were acting in their official capacities is relevant only to Count II.

Unlike the documents above, the Civil Complaint, Docket Sheet, the Text-Only Docket Entry, and the Motion for Reconsideration are useful background information for the jury. As that is also a proper non-propensity purpose,[31] I therefore conclude that these seven documents are both offered for a non-propensity purpose and are relevant to that purpose.

---

[30]  These various documents are found at Doc. 90 (Exhibit), Ex. 1 (Docs. 1-10) at 2-40.

[31]  The Third Circuit has held that background information that would be helpful to the fact finder is admissible under Rule 404(b). *United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010).

###### ii.      Documents from Docket No. 2:19-cv-1398

The Government seeks admission of the Civil Complaint; the Docket Sheet;

an R&R from Magistrate Judge Kelly, a Text-Only Docket Entry, and an Order

from Chief Judge Hornak adopting the R&R in the case docketed at 2:19-cv-

1398.[32] As in the case discussed above, the R&R and the Order from Chief Judge

Hornak adopting the R&R are relevant to Holmes' mental state and suggest that he

had a motive for allegedly threatening these judges. Similarly, the Civil Complaint,

Docket Sheet, and Text-Only Docket Entry would assist the jury's comprehension

of the relevant aspects of this case. Accordingly, these five documents are relevant

to a non-propensity purpose.

###### iii.      Documents from Docket No. 2:22-cv-47

The Government has asked the Court to determine the admissibility of the

Civil Complaint, a Text-Only Docket Entry, Magistrate Judge Kelly's Order of

Recusal, two R&Rs from Magistrate Judge Eddy, and a Memorandum Opinion

from Chief Judge Hornak adopting the R&R in the civil case docketed at 2:22-cv-

47.[33] Again, the two R&Rs and the Memorandum Opinion address Holmes'

alleged motive and demonstrate that these judges were acting in their official

capacities. The Civil Complaint and Text-Only Docket Entry provide needed

---

[32]   These documents are found at Doc. 90 (Exhibit), Ex. 1 (Docs. 1-10) at 42-95 and Ex. 2 (Docs. 11- 20) at 18, 20-22.

[33]   These documents are found at Doc. 90 (Exhibit), Ex. 2 (Docs. 11-20) at 78-99, 101 and Ex. 3 (Docs. 21- 27) at 2, 4-15, 17-27, and 29-32.

background for the jury. Magistrate Judge Kelly's Order of Recusal similarly provides context for the jury to understand why Magistrate Judge Eddy began to preside over this case. These documents are therefore relevant to a non-propensity purpose.

### iv.       Documents from Docket No. 2:22-cv-1342

The Government seeks admission of the following documents from the case docketed at 2:22-cv-1342: the Civil Complaint, Magistrate Judge Kelly's Order of Recusal, a Text-Only Docket Entry, an R&R from Magistrate Judge Eddy, and a Memorandum Opinion from Chief Judge Hornak.[34] Like the cases discussed above, the R&R and Memorandum Opinion are official judicial actions that are also relevant to Holmes' alleged motive. The Civil Complaint, Magistrate Judge Kelly's Order of Recusal, and the Text-Only Docket again serve the purpose of providing the jury with sufficient background information. As such, the Government has identified a relevant, non-propensity purpose for these documents.

### v.       Documents from Docket No. 2:22-cv-1375

The Government requests that the Court admit the Civil Complaint, a Text-Only Docket Entry, an R&R from Judge Eddy, a Memorandum Opinion from Chief Judge Hornak, and an Order from Chief Judge Hornak dismissing the

---

[34]  These documents can be found at Doc. 90 (Exhibit), Ex. 3 (Docs. 21-27) at 34, 36-45 and Ex. 5 (Docs. 35-38) at 2, 4-10, and 12-20.

complaint in this case.[35] I again conclude that the R&R, Memorandum Opinion, and Order from Chief Judge Hornak help establish Holmes' alleged motive and show that these judges were engaged in official duties. The Civil Complaint and the Text-Only Docket Entry provide the jury with useful background information. Consequently, these documents serve a relevant, non-propensity purpose.

### vi.    Documents from Docket No. 2:22-cv-1612

In the case docketed at 2:22-cv-1612, the Government identified only the Civil Complaint and the Text-Only Order that assigned Magistrate Judge Eddy to this case as the relevant documents.[36] The Civil Complaint provides necessary context for the jury to understand the Text-Only Order. The Text-Only Order serves to identify Holmes' motive and to show that Magistrate Judge Eddy had been engaged in official duties.

### vii.   The Rule 403 Balancing Test

Despite serving relevant, non-propensity purposes, these documents must still pass the Rule 403 balancing test.[37] Individually, it is unlikely that these documents pose much risk of prejudice to Defendant or are likely to confuse the jury. The aggregate effect of these filings is a different story. This large volume of

---

[35] These documents can be found at Doc. 90 (Exhibit), Ex. 3 (Docs. 21-27) at 47-96 and Ex. 4 (Docs. 28-34) at 11, 13-19, 21-23, and 25-26.

[36] These documents can be found at Doc. 90 (Exhibit), Ex. 4 (Docs. 28-34) at 45-83 and Ex. 5 (Docs. 35-38) at 22.

[37] Even if the Court were to instead include that these documents are intrinsic evidence relevant to Count II, they still must pass the Rule 403 balancing test. *United States v. Haas*, 184 F. App'x 230, 234 (3d Cir. 2006) (…we emphasize that even "intrinsic" evidence is subject to Rule 403 balancing.").

documents runs the risk of seriously confusing the jury. Although the Government asserts that "Holmes issued the April 7, 2023 communication in retaliation for *all* of the victim-judges' official actions, not just any one or two in particular," I conclude that many of these documents are needlessly cumulative.[38] Accordingly, I deny this part of the Government's motion without prejudice. I encourage the parties to confer and stipulate to any common ground regarding these issues.[39]

### b.    The Second Category of Documents

For the Government's second category of documents, the Government first contends that these documents are intrinsic evidence for both counts as they prove that the April 7, 2023 communication contains true threats and that Holmes issued the threats recklessly. Alternatively, the Government argues that these documents serve the purpose of proving Holmes' motive and to provide the jury with a fuller picture of his activities.

### i.    December 2, 2019 Correspondence in Docket No. 2:19-cv-1398[40]

According to the Government, this letter led to Holmes being interviewed by the Deputy Marshals on December 17, 2019.[41] Under Rule 404(b), the Government

---

[38]   For example, I note that the Text-Only Docket Entry in the case docketed at No. 2:17-cv-1278 clearly indicates that this is a case brought by Holmes. Doc. 90 (Exhibit), Ex. 1 (Docs. 1-10) at 19. This suggests that including the Civil Complaint as well is unnecessarily cumulative.

[39]   From the Court's perspective, it appears non-controversial that Holmes maintained these civil suits that were presided over by Chief Judge Hornak, Magistrate Judge Kelly and Magistrate Judge Eddy.

[40]   This document is found at Doc. 90 (Exhibit), Ex. 2 (Docs. 11-20) at 2-16.

argues that this letter again demonstrates motive. Upon a review of the letter, I agree that it is relevant to the non-propensity purpose of establishing Holmes' alleged motive when writing the April 7, 2023 Letter. This correspondence also provides necessary information for the jury to understand references in the April 7, 2023 Letter. I further note that it is also relevant to establishing Holmes' mental state when he wrote the April 7, 2023 Letter by suggesting that he acted recklessly when he had previously received notice regarding the use of certain language.

### ii.    September 17, 2020 Correspondence in Docket No. 2:19-cv-1398[42]

As Defendant has until August 5, 2024 to object to this sealed exhibit, I will not rule on this issue at this time. I simply note that, based on the Government's representations regarding this exhibit, it likely serves a relevant, non-propensity purpose under Rule 404(b) and may in fact be intrinsic evidence.

### iii.    October 8, 2020 Correspondence in Docket No. 2:19-cv-1398[43]

The Government highlights two relevant portions of the letters received on October 8, 2020: Holmes' references to the second visit he received from the Deputy Marshals and a printout of information for judges in the Western District of Pennsylvania.  Both provide necessary context to evaluating whether the April 7, 2023 letter includes a true threat by referencing *Bad Elk v. United States*. In *Bad*

---

[41]  Doc. 95 (Reply Brief in Support of Motion in Limine) at 12.
[42]  This correspondence is found at Doc. 96 (Sealed Exhibit), Ex. 1.
[43]  This correspondence is found at Doc. 90 (Exhibit), Ex. 2 (Docs. 11-20) at 24-50.

*Elk*, the Supreme Court of the United States held that an individual had the right to use force to resist an unlawful arrest.[44] Without knowing that Holmes blamed the judges for sending Deputy Marshals to his home, it is difficult to understand why he would allegedly threaten to enforce *Bad Elk*. Therefore, I conclude that the two letters received on October 8, 2020 provide relevant context to the jury and provides further insight into Holmes' alleged motive.

### iv.   November 3, 2020 Correspondence in Docket No. 2:19-cv-1398[45]

The Government suggests that the November 3, 2020 correspondence also provides necessary context for the *Bad Elk* portion of the April 7, 2023 Letter. Like the October 8, 2020 Correspondence, the references in this portion of the correspondence provide useful background to understand why Holmes allegedly threatened to enforce *Bad Elk*. Failing to provide this context would unnecessarily confuse the jury. As such, the November 3, 2020 Correspondence serves a relevant, non-propensity purpose.

### v.   December 29, 2020 Correspondence in Docket No. 2:19-cv-1398[46]

In this correspondence, Holmes continued to assert that Chief Judge Hornak and Magistrate Judge Kelly sent the Deputy Marshals to his residence. Again, this provides the jury with sufficient context to evaluate the *Bad Elk* portion of the

---

[44]   177 U.S. 529, 20 S. Ct. 729, 44 L. Ed. 874 (1900).
[45]   This correspondence is found at Doc. 90 (Exhibit), Ex. 2 (Docs. 11-20) at 52-57.
[46]   This correspondence is found at Doc. 90 (Exhibit), Ex. 2 (Docs. 11-20) at 59-65.

April 7, 2023 Letter and his motive when he allegedly made this threat. Without understanding this alleged dispute between Holmes and the judges, the reference to *Bad Elk* is practically meaningless. As was the case for the October 8, 2020 Correspondence and November 3, 2020 Correspondence, this is a relevant, non-propensity purpose that does not rely on an improper inference.

### vi.   December 20, 2021 Correspondence in Docket No. 2:19-cv-1398[47]

As Defendant has until August 5, 2024 to object to this sealed exhibit, I will not rule on this issue at this time. Based on the representations of the Government, it appears likely that this exhibit would provide relevant context to the *Bad Elk* portion of the April 7, 2023 Letter.

### vii.   April 21, 2021 Correspondence in Docket No. 2:17-cv-1278[48]

In the April 21, 2021 Correspondence, Holmes states that "the two cops, [Chief Judge] Hornak and [Magistrate Judge] Kelly days are numbered." The Government contends that this provides necessary context for proving that the April 7, 2023 Letter contained true threats. I agree as this Correspondence highlights the alleged history between Holmes and the judges. As with the other letters I have reviewed so far, I conclude that the April 21, 2021 Correspondence goes to both the issue of motive and to demonstrate Holmes' mental state when he

---

[47]   This correspondence is found at Doc. 96 (Sealed Exhibit), Ex. 3.
[48]   This document is found at Doc. 90 (Exhibit), Ex. 2 (Docs. 11-20) at 67-76.

allegedly wrote the April 7, 2023 Letter. It serves a non-propensity purpose by showing the longstanding history between Holmes and the judges and his alleged anger over their actions.

### viii.   June 10, 2021 Correspondence in Docket No. 2:17-cv-1278[49]

As Defendant has until August 5, 2024 to object to this sealed exhibit, I will not rule on this issue at this time. Based on the representations of the Government, it appears likely that this exhibit would provide relevant context to the *Bad Elk* portion of the April 7, 2023 Letter.

### ix.   October 12, 2022 Correspondence in Docket No. 2:22-cv-580[50]

In the October 12, 2022 Correspondence, Holmes wrote "[m]y family members returned home from the military – No harm better come to Mr. Holmes … My family said this go for Judges also." I agree with the Government's contention that this provides relevant context for proving that the April 7, 2023 included a true threat against the judges. Like the Correspondence from April 21, 2021 in the case docketed at No. 2:17-cv-1278, this statement addresses the purported history Holmes has with these judges. Further, it also provides clarity regarding the alleged reference to Holmes' military family members in the April 7,

---

[49]   This document is found at Doc. 96 (Sealed Exhibit), Ex. 2.
[50]   This document is found at Doc. 90 (Exhibit), Ex. 4 (Docs. 28-34) at 28-43.

2023 Letter. If the jury lacked this necessary context, it would be difficult to evaluate whether the statements in the April 7, 2023 Letter are in fact true threats.

### x.    October 20, 2022 Correspondence in Docket No. 2:22-cv-490[51]

In part of this correspondence, Holmes wrote Chief Judge "Hornak will answer for having me arrested 6-29-22 ...." Like many of the other letters at issue in this section, the October 20, 2022 Correspondence would provide context to the alleged threat on the *Bad Elk* portion of the April 7, 2023 Letter and insight into Holmes' alleged motive. These are relevant, non-propensity purposes under Rule 404(b) as the jury may not effectively evaluate the *Bad Elk* reference without this information.

### xi.    Rule 403 Analysis

As these letters are all offered for a similar purpose, both to prove motive and to provide context, I evaluate them as a group under Rule 403. Individually, these documents do not pose much risk of prejudice to Defendant. Taken in isolation, they are not likely to confuse the jury or prompt the jury to penalize Holmes for uncharged conduct.

Turning to the cumulative effect of these letters, Rule 403 still does not counsel against admission. To conclude that the jury would hold Holmes accountable for these prior letters assumes that the prior letters are in fact threats.

---

[51]   This document is found at Doc. 90 (Exhibit), Ex. 4 (Docs. 28-34) at 2-9.

As evidenced by the present case, that is an issue for which Holmes would be entitled to a trial. But that does not mean admitting these letters would run the risk of holding a trial within a trial. For the jury to convict Holmes, it does not need to determine whether the prior letters are true threats or even believe that these prior letters are borderline threatening as the Government has argued.

Nor can it be said that these letters may be used to establish that it is in Holmes' nature to issue threats. Again, that assumes that the prior letters were actually threatening. Even if that proved to be the case, an appropriate limiting instruction would surely curb the jury's improper use of these letters. In such circumstances, I do not believe that the prejudice suffered by Holmes substantially outweighs the probative value of these letters.

Finally, I note that this determination does not prevent Defendant from objecting at trial to needlessly cumulative evidence. While individually each of these letters remain relevant to the non-propensity purposes of motive and context, presenting each one, especially at length, may raise an issue under Rule 403. The Court will address this question should it arise at trial.

### 2.    The Statements

Next, the Government has sought the exclusion of certain exculpatory statements Holmes made while being interviewed by Faherty and Berger.[52] The United States first asserts that testimony about the interviews is not hearsay and

---

[52]   Doc. 89 (United States of America's Motion in Limine) at 8-9.

that any inculpatory statements made by Holmes during these interviews are admissions by a party opponent.[53] Turning to the exculpatory statements made by Holmes, the Government contends that they are inadmissible hearsay.[54]

In response, Defendant first notes that the "fact and contents of the 2019 and 2020 interviews are not intrinsic evidence to the crimes charged here …" and that the Government has not identified a non-propensity purpose under Rule 404(b).[55] Holmes then proceeds to challenge the Government's request to exclude the exculpatory statements he made.[56]

### a.    The Interview and the Inculpatory Statements

To begin, I note that the Government has not sought a pretrial ruling regarding the admissibility of any testimony from Faherty and Berger and the inculpatory statements made by Holmes. As Defendant only argues this point in opposition and not on his own motion, I will not decide this question at this time.

### b.    The Exculpatory Statements

As noted above, this Court "should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."[57] Determining whether these statements are being offered for the truth of the matter asserted will, in large part, depend on the context at trial. For example, should

---

[53]  *Id*. at 8-9.
[54]  *Id.* at 10.
[55]  Doc. 92 (Defendant's Response in Opposition) at 24.
[56]  *Id.* at 25.
[57]  *Tartaglione*, 228 F. Supp. 3d at 406.

Holmes testify, the statements may be admissible, non-hearsay under Federal Rule of Evidence 801(d)(1)(B). Simply using these statements for impeachment purposes may also be permissible. Should either party introduce the underlying report prepared by Faherty and Berger, the Court would likely evaluate these statements under Federal Rule of Evidence 106. Finally, the Court would also have to consider whether Federal Rule of Evidence 807 permits these statements to be introduced. Accordingly, I deny this portion of the Government's motion without prejudice; the United States is welcome to raise this objection again at trial for the Court's further consideration.

## IV.   CONCLUSION

The Government's Omnibus Motion in Limine is granted in part and denied in part. The various letters identified by the Government are admissible subject to Defendant's objection to the redactions and the issue of unnecessarily cumulative evidence. The Court also grants the Government's motion as to the admissibility of these documents without the need to present extrinsic evidence regarding authenticity under Rule 902(4), excluding the three sealed documents found at Doc. 96. As to the remainder of the motion, I deny it without prejudice and encourage the parties to meet and confer on the issues identified herein.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge for
the Middle District of Pennsylvania
Specially Presiding